**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**
https://www.flsb.uscourts.gov/

| | |
|---|---|
| In re: | Case No. 26-19877-CAP |
| BNT Services, Inc., | Chapter 11 |
| Debtor. | |

_________________________________/

**UNITED STATES TRUSTEE'S EMERGENCY MOTION TO**
**CONVERT CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7**

**EMERGENCY HEARING REQUESTED**
**ON AUGUST 18, 2026, AT 11:00 A.M.**

The debtor filed on August 12, 2026, an emergency motion to wind down business operations due a lack of liquidity, business customers facing construction liens, and the expiration of the debtor's qualifying contractor's business license. Such motion seeks to establish a lien resolution fund from contributions made by the debtor's principal derived from the sale of non-estate assets. While the principal's seemingly altruistic intentions to soften the damage caused by the debtor's imminent closure may be made in good faith, the conversion of this case to a case under chapter 7 would instead allow an independent fiduciary to address these issues and further investigate the cause of the debtor's demise. The need for an independent fiduciary is amplified in this case because the debtor's cash position decreased by $300,000 through July 2026 just prior to filing for bankruptcy, and the recipients of such transfers, which is presently unknown as the debtor has yet to file schedules, may be targets of potential avoidance actions for the benefit of estate creditors.

Guy A. Van Baalen, the Acting United States trustee for Region 21 (the "UST"), requests conversion of this chapter 11 case filed by BNT Services, Inc. (the "Debtor") to a chapter 7 case under 11 U.S.C. § 1112(b)(4)(A) because the Debtor's recent financials[1] and filings[2] demonstrate there is substantial diminution of the estate by virtue of the Debtor's reported weekly negative cash

1 Dkt. No. 58.
2 Dkt. No. 61.

flow and there is no reasonable likelihood of rehabilitation because the Debtor intends to wind down business operations. In support, the UST states:

BACKGROUND

1. The Debtor petitioned for relief under chapter 11 on July 27, 2026.

2. The Debtor obtained authority to use cash collateral and maintain existing bank accounts on an interim basis through August 18, 2026.[3]

3. In support of the request to use cash collateral on an interim basis, the Debtor prepared projections for the first 3 weeks of August 2026, beginning on August 2, 2026.

4. Such projections stated the Debtor's beginning cash balance on August 2, 2026, was $92,290.

5. The Debtor filed its case management summary on July 29, 2026, and indicated, consistent with the Debtor's cash collateral projections, that the Debtor's aggregate cash balance in its bank accounts as of the petition date was $92,290.[4]

6. After the Debtor filed for bankruptcy, the UST requested the Debtor to provide, among other documents, certain pre-petition financials, including the list of transfers made by the Debtor within the 90-day period prior to the petition date.

7. The Debtor provided the UST a list of transfers made between April 27, 2026, through June 30, 2026, totaling $2,337,266.91. A chart chronologically detailing the transfers during such period is attached as **Exhibit A**.

---

[3] Dkt. Nos. 33 & 34.

[4] Dkt. No. 16 at ¶ 9 ("The Debtor's assets include cash in operating accounts at Seacoast National Bank ending in 5761 and 5841 and its payroll account at Truist Bank ending in 6055 in the aggregate amount of $92,290…").

8. Moreover, the Debtor provided the UST a balance sheet for January 2026 through June 2026. A copy of the balance sheet is attached as **Exhibit B**.

9. Notably, the balance sheet that was printed on August 5, 2026, reflects that the aggregate balance in the Debtor's bank accounts as of June 30, 2026, was $389,394.97.

10. The Debtor has yet to file schedules to identify the recipients of the $297,104.97 transferred within the 1 month prior to filing for bankruptcy as the Debtor moved to extend the deadline to file schedules and related documents.[5]

11. The meeting of creditors is scheduled to commence on August 31, 2026.

12. During first day hearings on July 30, 2026, the Debtor informed the Court and parties in attendance that the Debtor intended to continue operations and pursue a sale under 11 U.S.C. § 363 as a going concern.

13. The Debtor neglected to mention the looming August 31, 2026, deadline when its qualifying contractor's license is set to expire, and that the Debtor could not continue operations unless this license was renewed.

14. On August 10, 2026, as required by the order authorizing the use of cash collateral on an interim basis, the Debtor filed an updated cash flow statement.[6]

15. In this updated statement, the Debtor disclosed that retail customer collections were $103,007 less than projected between July 27, 2026, through August 2, 2026, and $95,823 less than projected between August 3, 2026, and August 9, 2026, which left the Debtor with an actual cash balance of $76,184 on August 9, 2026.

---

[5] Dkt. No. 60.
[6] Dkt. No. 58.

16. The Debor then filed on August 12, 2026, its *Emergency Motion for Authority to Implement Orderly Wind-Dwon, Approve Restricted Robbins Contribution Agreement, Establish Customer Lien Resolution Fund, and Approve Related Relief*[7] (the "Wind-Down Motion").

17. In the Wind-Down Motion, the Debtor requests authority to implement a wind-down of the Debtor's business by obtaining authorization to enter into the Restricted Robbins Contribution Agreement and establish a Customer Lien Resolution Fund, which will be used to address construction liens placed on the Debtor's customer's properties.

18. The Debtor contends that this proposal preserves the Debtor's "books, receivables, causes of action, project and permitting records, and potential liquidation value while reducing the risk of additional administrative insolvency and customer harm".[8]

19. The proposed contribution agreement between the Debtor and Bret Robbins ("Robbins") provides that membership interests owned by Robbins in 3 non-debtor entities would be liquidated to generate the proceeds for the lien resolution fund.

20. In this agreement, the Debtor and Robbins request the Court to enjoin creditors, which may or may not be creditors of the estate, that may attempt to levy or otherwise collect on these membership interests, which are not property of the estate.

LEGAL ARGUMENT

21. A chapter 11 case must be dismissed or converted under § 1112(b)(1), whichever is in the best interest of creditors, "for cause" unless the court finds that dismissal or conversion is not in the best interest of creditors due to unusual circumstances and a party in interest establishes there is a reasonable likelihood that a plan will be confirmed within a reasonable time and the

---

7 Dkt. No. 61.

8 *Id.* at ¶ 35.

grounds for dismissal or conversion include an act or omission by the debtor for where there is a justifiable reason and that such act or omission will be cured within a reasonable time fixed by the court. *See* 11 U.S.C. § 1112(b).

22. Section 1112(b)(4) contains a list of non-exhaustive factors warranting dismissal or conversion "for cause". *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984).

23. The bankruptcy court may consider any additional factors, including a debtor's bad faith, and the determination of whether a chapter 11 case should be dismissed or converted for cause is based upon the circumstances of the case. *Id.*; *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988).

24. In this case, "for cause" is established under § 1112(b)(4)(A) because there is a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation". 11 U.S.C. § 1112(b)(4)(A).

25. "[T]he inquiry here [under § 1112(b)(4)(A)] is twofold. First, the Court must look at the track record of the Debtor to determine if it is suffering losses or making gains. Second, the Court must determine whether rehabilitation is likely given the evidence presented at hearing." *Nester v. Gateway Access Sols., Inc.* (*In re Gateway Access Sols., Inc.*), 374 B.R. 556, 562 (Bankr. M.D. Pa. 2007).

26. "Negative cash flow and an inability to pay current expenses as they come due can satisfy the continuing loss to or diminution of the estate standard for purposes of § 1112(b)." *In re 412 Boardwalk, Inc.*, 520 B.R. 126, 135 (Bankr. M.D. Fla. 2014) (citing *In re Gateway Access Sols., Inc.*, 374 B.R. at 564); *In re Schriock Constr. Inc.*, 167 B.R. 569, 575 (Bankr. D. N.D. 1994) ("This element can be satisfied by demonstrating that the debtor incurred continuing losses or maintained a negative cash flow position after the entry of the order for relief."); *In re Galvin,* 49

B.R. 665, 669 (Bankr. D. N.D. 1985) (post-petition negative cash flow is considered evidence of continuing losses).

27. Here, the Debtor's recent financials show the diminution of the estate; the Debtor's updated cash flow statement shows the losses that have already occurred.

28. Moreover, the Debtor states in its Wind-Down Motion that the purpose of the motion is to "reduc[e] the risk of **additional administrative insolvency**" – meaning this case may be already administratively insolvent.

29. "[R]ehabilitation [under § 1112(b)(4)(A) means that the 'debtor will be reestablished on a secured financial basis, which implies establishing a cash flow from which its current obligations can be met.'" *In re Motel Props., Inc.*, 314 B.R. 889, 895 (Bankr. S.D. Ga. 2004) (quoting *In re AdBrite Corp.*, 290 B.R. 209, 216 (Bankr. S.D. N.Y. 2003)).

30. The Debtor admits in its Wind-Down Motion that there is insufficient liquidity for the Debtor to continue operations, so there is no reasonable chance of rehabilitation as the Debtor is no longer seeking to reestablish its business to meet ongoing obligations.

31. Thus, this case must be dismissed or converted "for cause" under § 1112(b)(4)(A).

32. Under the facts of this case, conversion, not dismissal, is in the best interest of creditor and the estate because there are substantial estate assets, the creditors will retain this forum to resolve their claims, and an independent fiduciary is necessary to investigate and evaluate whether claims should be brought by the estate.

[ This section intentionally left blank. ]

WHEREFORE, the UST requests the Court to convert this chapter 11 case to a case under chapter 7 and for any further relief the deemed just, equitable, and proper.

Guy A. Van Baalen
Acting United States trustee for Region 21

*/s/ John Schank*
John Schank
Florida Bar No. 1002828
john.s.schank@usdoj.gov
Office of the United States Trustee
51 SW 1st Ave, Suite 1204
Miami, FL 33130
(305) 536-7285